IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THERESA A. KOVACS | ) | CASE NO. |
| 6125 Berkey-Southern Road | ) | |
| Whitehouse, Ohio 43571 | ) | HON. |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| Vs. | ) | **(Employment Discrimination)** |
| | ) | |
| UNIVERSITY OF TOLEDO | ) | |
| c/o Ohio Attorney General | ) | **JURY DEMAND ENDORSED** |
| 30 East Broad Street, 14th Floor | ) | **HEREON** |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Theresa A. Kovacs (the "Plaintiff"), by and through her undersigned counsel, alleges as follows:

1. This is a retaliation and age discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.) ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621, et seq.) ("ADEA"), filed by an employee of University of Toledo from January 2003 until she was terminated by the University on February 9, 2021.

2. Plaintiff Theresa A. Kovacs ("Kovacs") is a fifty-nine (59) year old white female, born on May 3, 1963.

3. Defendant University of Toledo (the "University") is a state university located in Toledo, Ohio.

4. The University is an employer within the meaning of Title VII.

5. The University is an employer as defined by § 11(b) of the ADEA.

6. At all relevant times the Plaintiff was over 40 years of age.

7. The University is a federal government contract holder with a duty to comply with Executive Order 11246, as Amended, 41 CFR (§§ 60-30.1 – 60-30.37).

## Jurisdiction

8. Plaintiff filed charges with the Equal Employment Opportunity Commission and received her right to sue notification on September 2, 2022, within ninety (90) days of the filing of this Complaint.

9. Jurisdiction is conferred upon this Court pursuant to Title VII, 42 U.S.C. § 2000e-5.

10. Jurisdiction is conferred upon this Court by virtue of 28 U.S.C. § 1331 – federal question jurisdiction.

11. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) as the claims arose in the Northern District of Ohio, specifically Lucas County, where Defendant University of Toledo is headquartered.

## Plaintiff's University Positions

12. Plaintiff, who has 23 years of professional experience in a variety of HR roles, has a B.A. in Individual Studies with an HR concentration and an

2

MBA in Executive Management. During the time she was employed by the University Plaintiff was a member of the Society for Human Resource Management.

13. Plaintiff was hired by the University in January 2003 as a Benefits Specialist in the University's Human Resources ("HR") Department. Over the ensuing 18 years, Plaintiff held a variety of positions in the University's HR Department.

14. Plaintiff was promoted several times during her tenure with the University and held several managerial positions in Human Resources with the University beginning in 2013.

15. In October of 2020, Plaintiff was the Director of Human Resources Academic & Talent Development (the "Director of HR") for the University, a position she had held for 2-1/2 years, since April of 2018.

## Hostility Toward Older Employees

16. Matthew Schroeder, a white male, started as the University's Executive Vice President and Chief Financial Officer in 2019. By virtue of Plaintiff's position as the Director of HR, she and Schroeder interacted on a regular basis.

17. Plaintiff regularly heard Schroeder comment that certain University employees should retire due to their age.

18. In August of 2019, soon after Schroeder started, Plaintiff heard him state that University employee Joan Stasa was old enough to retire.

19. The following summer, in 2020, Plaintiff heard Schroeder tell another University employee, Wendy Davis, that she should not feel sorry about firing University employee Carrier Herr because Ms. Herr was old enough to retire.

## HR Department Changes

20. Two new employees with responsibilities in the HR Department joined the University in early October of 2020. Melissa Hurst, a white female, started as the University's Executive Director for Talent Strategy and Development on October 1. John Elliot, a white male, started on October 5th as the Associate Vice President and Chief Human Resources Officer. Plaintiff began reporting to John Elliott after he started.

21. Until John Elliott and Melissa Hurst started at the University in October of 2020, the Plaintiff's performance reviews were always excellent. In the seventeen (17) years between 2003 and 2020, the Plaintiff had never received a complaint or any type of disciplinary action from the University.

## Protected Activities

22. On October 5, 2020, Sabrina Taylor, Associate Vice President of Budgeting and Planning for the University, called Plaintiff to ask questions about a proposal made by University employee Jason Toth. Taylor worked very closely with and reported to Matthew Schroeder. Taylor wanted to discuss Toth's desire to move another University employee, Tracey Brown, from a union to a non-union position without posting the non-union position.

Specifically, Toth wanted to promote Brown, a white female, from Administrative Assistant to Contract Specialist without posting the position and making it available for other applicants.

23. During this phone call Plaintiff explained to Taylor the numerous problems with Toth's plans relating to Tracey Brown. First, Brown did not meet the minimum qualifications for the Contract Specialist position in which Toth wanted to place her because she did not have a Bachelor's Degree.

24. Plaintiff also explained to Taylor the requirements imposed on the University with respect to jobs by the Office of Federal Contract Compliance Programs ("OFCCP"), as well as Equal Employment Opportunity ("EEO"). For example, the OFCCP requires that a job description be carefully crafted for the position, and not for a person. It also mandates that the basic qualifications for an applicant be established in advance by an employer.

25. Kovacs stated to Taylor that the purpose of the University and others who participate in the OFCCP and are subject to EEO laws adhering to these requirements is the avoidance of unintentional discrimination and disparate impact.

26. On October 6, 2020, Plaintiff spoke with Taylor's supervisor, Schroeder, on the phone about Toth's request relating to Tracey Brown.

27. During this phone call Plaintiff gave the same explanation she had given to Taylor the day before and specifically warned Schroeder about the problems Toth's request created for non-white applicants and employees.

28. On October 8, 2020, Plaintiff emailed Schroeder and explained again why Toth's proposal was problematic with respect to the Fair Labor Standards Act. A copy of this correspondence is attached hereto as Exhibit 1.

29. Plaintiff spoke with Schroeder on the phone a few days later, on October 12, 2020. During this call Plaintiff reiterated the problems that Toth's request posed for OFCCP and EEO compliance, and elaborated again on the disparate impact Toth's request posed for non-white job applicants.

30. On the same day, Plaintiff emailed Toth and outlined numerous problems associated with his efforts to promote Brown. A copy of this email is attached hereto as Exhibit 2. In this correspondence Plaintiff wrote:

> No, having an associate's degree and pursuing a bachelor's degree does not meet the minimum qualifications. Moving Tracey to the Contract Specialist position at this time, places UToledo in a compromising legal position as she does not meet the minimum (basic) qualifications. Promoting an employee that does not meet the minimum qualifications goes against EEO. To keep the process fair and equitable, the OFCCP states to help keep everybody on the same page, carefully craft a job description for the position, not for a person you would like to promote. The OFCCP also states: The basic qualifications which an applicant must possess means qualifications that the employer advertised to potential applicants or criteria which the employer established in advance.
>     To avoid potential disparate impact (Disparate impact is often referred to an unintentional discrimination) none the less, our practices must be uniformly and consistently applied. (p. 1)

31. On October 19, 2020, Plaintiff spoke with John Elliott, the University's newly hired Associated VP and Chief Human Resource Officer, about the legal problems that could result from granting Toth's request. Plaintiff explained to Elliott the same things she had already communicated to Toth,

6

Taylor and Schroeder, which was that Toth's request to promote Brown violated the OFCCP and EEO laws and could have a disparate impact on non-white job applicants.

32. Plaintiff had a very similar discussion in a WebEx meeting the following day with Elliott, Toth and another University employee, Dreyon Wynn. Plaintiff again protested Toth's request to hire Tracey Brown without posting the position as this violated OFCCP and EEO laws. Plaintiff explained disparate impact and implicit bias again during this meeting.

33. Seventeen days later, on November 6, 2020, John Elliott and Melissa Hurst informed Plaintiff that she was being demoted to a Senior HR Consultant. Although Plaintiff's salary was not cut, she was removed from her office, told to work in a cubicle and accorded significantly less responsibility.

34. On Friday, November 13, 2020, Plaintiff was informed by Elliott that she would be terminated if she failed to accept the offer of demotion to Senior HR Consultant by Monday, November 16. A copy of Elliott's correspondence is attached hereto as Exhibit 3.

35. Plaintiff's demotion was involuntary and not "for cause."

### Younger employees given Plaintiff's job responsibilities

36. Shortly after Plaintiff's demotion, her responsibilities as Director of HR were divided between two other University employees, Jason Beck and Melissa Studer. Beck was 42 years old at the time and Studer was in her thirties.

7

37. On February 9, 2021, Plaintiff was abruptly terminated by the University.

38. Plaintiff's termination was involuntary and not "for cause."

39. John Elliott approved the termination decision and notified Plaintiff of it. Elliott told Plaintiff that the University had decided to go in a different direction. During the conversation Elliott did not mention anything related to Plaintiff's job performance.

40. The University demoted and terminated Plaintiff in retaliation for her complaints about the University's potentially unlawful and discriminatory conduct with respect to the promotion of Tracey Brown.

41. The University demoted and terminated Plaintiff due to her age.

42. The University treated its comparable, similarly-situated younger employees more favorably than the Plaintiff.

### **OCRC finds the University unlawfully terminated Plaintiff**

43. Plaintiff submitted discrimination charges to the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") in February 2021. On November 18, 2021, the OCRC issued a finding of probable cause that Plaintiff was demoted and terminated unlawfully in retaliation for protected activity. A copy of the OCRC's finding of Probable Cause against the University is attached hereto as Exhibit 4.

44. As a direct and proximate result of the University's discriminatory actions toward Plaintiff, she has suffered economic and non-economic injuries,

including, but not limited to, pain and suffering, loss of salary, benefits, and other privileges and conditions of employment, for which Plaintiff is entitled to recover compensatory damages.

45. The University's discriminatory treatment of Plaintiff was malicious, willful, wanton, and/or in conscious disregard of Plaintiff's rights, rendering the University liable for punitive damages and attorneys' fees.

### Widespread Discriminatory Conduct by the University Under Matthew Schroeder's Watch

46. The University's Administration, especially the University's Human Resources Department, has had numerous probable cause findings issued against it since Matthew Schroeder began working there.

47. In the fifteen months between June 2021 and September 2022, the Ohio Civil Rights Commission issued five findings of probable cause of discrimination on the basis of race against the University, all of which involved the University's administration.

48. On June 24, 2021, the OCRC issued a finding of probable cause that the University had discriminated against Wendy Davis, an African American woman, based on her race. Ms. Davis was Associate V.P./Chief Human Resources when she was terminated by Schroeder in September of 2020. A copy of this probable cause finding is attached hereto as Exhibit 5.

49. On September 30, 2021, the OCRC issued a finding of probable cause that the University had discriminated against Shantae Neely, an African American woman, based on her race. Ms. Neely also was a longtime Grants

Accounting Resource Analyst who had been denied a promotion by a less-qualified white employee. A copy of this probable cause finding is attached hereto as Exhibit 6.

50. On October 21, 2021, the OCRC issued a finding of probable cause that the University had discriminated against Dreyon Wynn, an African American man, based on race and retaliation. Mr. Wynn was the University's Director of Employee/Labor Relations and Human Resources Compliance when he was terminated by John Elliott in late January 2021. A copy of this probable cause finding is attached hereto as Exhibit 7.

51. On November 18, 2021, the OCRC issued a finding of probable cause that the University had discriminated against Mary Elizabeth Harper, an African American woman, on the basis of her race, sex and age when John Elliott rescinded a job offer the University had made to her and she had accepted in December of 2020. A copy of this probable cause finding is attached hereto as Exhibit 8.

52. On September 29, 2022, the OCRC issued a finding of probable cause that the University had discriminated against Lee Tina Lawrence, an African American woman, based on her race. Ms. Lawrence was a longtime Grants Accounting Resource Analyst for the University who had been passed over for a promotion by a lesser qualified white employee. A copy of this probable cause finding is attached hereto as Exhibit 9.

## COUNT ONE
## Retaliation in Violation of Title VII, 42 U.S.C. §2000e-2

53. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 52 above as if fully set forth herein.

54. Plaintiff engaged in protected activity in October of 2020 when she warned University Managers Matthew Schroeder and John Elliott on several occasions that actions the University planned to take with respect to promoting a white employee were unlawful and potentially discriminatory.

55. The Plaintiff was demoted on November 6, 2020 and subsequently terminated on February 9, 2021.

56. The University knowingly discriminated and retaliated against Plaintiff in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 200e-2 and Ohio Revised Code § 4112.02(I) in furtherance of the University's interference with protected activities.

57. As a direct and proximate result of Defendant's actions against Plaintiff, she has suffered actual and consequential damages, including but not limited to, loss of income, loss of employment benefits, humiliation, pain and suffering and emotional distress, loss of enjoyment, all of which are reasonably anticipated to continue indefinitely into the future.

58. The University's actions against Plaintiff were undertaken with knowledge, malice, intent to injure and/or with such reckless or wanton disregard for Plaintiff's rights as to entitle her to an award of punitive damages.

59. The Plaintiff has been injured as a direct and proximate result of the University's unlawful conduct.

## COUNT TWO
### (Age Discrimination – Wrongful Demotion and Termination In Violation of 29 U.S.C. § 621 et seq.)

60. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 59 above as if fully set forth herein.

61. At all times relevant herein, Plaintiff was a member of a statutorily protected class under 29 U.S.C. § 631(a).

62. The University treated Plaintiff differently from other similarly situated employees based on her age.

63. The University demoted and terminated the Plaintiff based on her age.

64. The University violated 29 U.S.C. § 621, et seq. and 29 U.S.C. § 623(a) by demoting and terminating Plaintiff based on her age.

65. The University replaced Plaintiff with significantly younger employees following her demotion.

66. The University retained other significantly younger employees when terminating Plaintiff.

67. As a direct and proximate cause of the University's conduct, the Plaintiff suffered and will continue to suffer damages.

WHEREFORE, Plaintiff demands that this Court grant her judgment against the University and the following relief:

A) All back pay and benefits lost due to the unlawful termination of the Plaintiff;

B) Award the Plaintiff compensatory damages based upon the trial of this matter;

C) Award reasonable attorney's fees and costs incurred to prosecute this action;

D) Award punitive damages against the University;

E) Award pre-judgment interest on all back pay and benefits and post-judgment interest on any judgment granting other damages or back pay and benefits;

F) Any other relief this Court deems necessary and just.

        Respectfully submitted,
        COHEN ROSENTHAL & KRAMER LLP

        /s/ Ellen M. Kramer
        Ellen M. Kramer #0055552
        emk@crklaw.com
        Jason R. Bristol #0072989
        jbristol@crklaw.com
        One Clinton Place
        3208 Clinton Avenue
        Cleveland, Ohio 44113
        216-815-9500 [Phone]
        216-781-7956 [Fax]
        www.crklaw.com

## JURY DEMAND

The Plaintiffs demand a trial by jury on each claim that may be so tried.

/s/ Ellen M. Kramer
Ellen M. Kramer #0055552