# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION
## (TOLEDO)

| | |
|---|---|
| CAROLYN CHAPMAN ) | CASE NO. |
| 9813 OAK BEND DRIVE ) | |
| HOLLAND, OHIO 43528, ) | JUDGE: HON. |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | |
| ) | |
| UNIVERSITY OF TOLEDO ) | |
| C/O STATE OF OHIO ) | |
| 30 E. BROAD STREET, 14TH FLOOR ) | |
| COLUMBUS, OH 43215 ) | |
| ) | |
| DEFENDANT. ) | |

## COMPLAINT WITH DEMAND FOR JURY TRIAL ENDORSED HEREUPON

**NOW COMES** the Plaintiff, Carolyn Chapman, by and through her undersigned attorney, Norman A. Abood, and for her Complaint against the University of Toledo states as follows:

## I. PRELIMINARY STATEMENT

1.      Plaintiff, Carolyn Chapman ("Plaintiff" or "Ms. Chapman") is an African American female who worked at the University of Toledo ("University") from April 30, 2007, until her race-based, retaliatory termination on January 15, 2021. During her time at the University, Ms. Chapman held multiple Human Resource roles with her most recent title being Director- Human Resources Clinical Operations. In this role, Ms. Chapman was tasked with overseeing the University Medical Center's Human Resources ("HR") department. During her time in her most

recent role, Ms. Chapman reported to former Associate Vice President of HR Wendy Davis and after Ms. Davis' termination, to Executive Director of Talent Strategy and Development, Melissa Hurst, a Caucasian Female, and to John Elliott, a Caucasian Male who was Senior Associate Vice president/Chief Human Resources Officer.

2.      On October 14, 2020, Plaintiff, Mr. Elliott, suddenly and without warning, served a 90-day Notice of Termination upon Ms. Chapman, a true and accurate copy of which is attached hereto and made a part hereof as Exhibit 1.

3.      As a result of her termination, Plaintiff filed charges of race discrimination and retaliation with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission ("EEOC"), in the case captioned *Carolyn Chapman v. the University of Toledo*, assigned OCRC case no. TOL72(41356)03012022 and EEOC number /22A-2022-01451C.

4.      Mr. Elliott had begun his employment at the University only nine (9) days before Ms. Chapman's 90-day notice was served.

5.      Ms. Hurst had begun her employment with the University only fourteen (14) days before Ms. Chapman's 90-day notice was served.

6.      Notwithstanding that Ms. Chapman had been employed with the University for 13 years, Defendant fired her allegedly for poor performance.

7.      Ms. Chapman possesses a graduate degree in Organizational Management, is a Professional in HR management (PHR), and has over 25 years of experience working in HR, including 13 years with the Defendant University of Toledo.

8.      Ms. Chapman did not receive any discipline prior to the termination of her employment.

2

9. Ms. Chapman was replaced by her former subordinate, a Caucasian person.

10. Other African American employees in upper management have also been fired and were replaced by Caucasian employees.

11. The Ohio Civil Rights Commission ("OCRC") has found probable cause in at least six (6) similar cases of race discrimination against Defendant within the past two (2) years.

12. On November 17, 2022, the OCRC issued its *Letter of Determination* finding after an investigation that it was probable that the University of Toledo had discriminated against Ms. Chapman by imposing upon her different terms and conditions of employment and terminating her on the basis of race. A true and accurate copy of the OCRC Letter of Determination is attached hereto and made a part hereof as Exhibit 2.

13. On December 15, 2022, the OCRC issued to Ms. Chapman its *Notice of Right to Sue*, a true and accurate copy of which is attached hereto and made a part hereof as Exhibit 3.

14. On February 24, 2023, The EEOC issued its *Notice of Right to Sue Within 90 Days*, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*. A true and accurate copy of the EEOC is attached hereto and made a part hereof as Exhibit 4.

15. As the Court is aware the Courts use the same legal standards to analyze discrimination claims brought under Title VII or O.R.C. 4112, see, e.g., *Jones v. Best Buy Stores, L.P.*, (6th Cir. 2010) 2010 U.S. Dist. LEXIS 8761, *16, 2010 WL 446577 citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992) and *Little Forest Medical Ctr. of Akron v. Ohio Civ. Rights Comm.*, 61 Ohio St. 3d 607, 575 N.E.2d 1164, 1167 (Ohio 1991); accord, Beca*Rachells v. Cingular Wireless Emple. Servs., LLC*, 732 F.3d 652, 661, 2013 U.S. App. LEXIS 20979, *19, 2013 FED App. 0295P (6th Cir.), 11, 120 Fair Empl. Prac. Cas. (BNA) 681, 97 Empl. Prac. Dec. (CCH) P44,931, 2013 WL 5645239.

## II. THE PARTIES

16.     Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 15 hereinabove as if fully rewritten herein.

17.      Plaintiff, Carolyn Chapman, is an African American female who at all times relevant hereto has resided within the City of Toledo, Lucas County, Ohio.

18.     The Defendant, University of Toledo (hereinafter alternatively referred to as ("University"), operates as State University organized and existing under the laws of the State of Ohio.

## III. JURISDICTION AND VENUE

19.     Plaintiff repeats and reiterates each and every allegation set forth in paragraph 1 through 18 hereinabove, as if fully rewritten herein.

20.     This action arises under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e-2 (Title VII)[1], 1988 (Civil Rights Attorney Fee Award Act of 1976)[2] and Ohio Revised Code Section 4112.01 et. Seq.

---

[1] Per the summary provided by the U.S. Department of Justice: "42 U.S.C. §2000e-2 makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex (including pregnancy and gender identity) or religion. The act also makes it unlawful to retaliate against a person because the person complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit. The statute prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion or sex."

[2] 42 U.S.C. § 1988 authorizes courts to award reasonable attorney's fees to prevailing parties in civil rights litigation to ensure effective access to the judicial process for civil rights plaintiffs; fees may not be awarded to a prevailing defendant except where the plaintiff's action was frivolous, unreasonable, or without foundation.

21.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction) and 28 U.S.C. §1343(a) (Civil Rights Jurisdiction).

22.     Plaintiff 's charge of race discrimination was timely filed with EEOC through the OCRC Toledo Field Office.

23.     The Court has original jurisdiction over Title VII claims filed within 90 days of a charging party's (Plaintiff herein) receipt of the EEOC's right to sue letter and, thus, this Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. §2000e-5(f)(3).

24.     Venue for this action properly lies in the United States District Court for the Northern District of Ohio, Western Division (Toledo), pursuant to 29 U.S.C. §1391(b) because the Defendant is located within the State of Ohio and this judicial district (29 U.S.C. §1391(b)(1)), the claims at issue arose in this judicial district (29 U.S.C. §1391(b)(2)) and pursuant to 42 U.S.C. 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## IV. OPERATIVE FACTS

25.     Plaintiff repeats and reiterates each and every allegation set forth in paragraph 1 through 24 hereinabove, as if fully rewritten herein.

26.     Plaintiff, Ms. Carolyn Chapman, is an African American woman who had worked at the University of Toledo since April 30, 2007, most recently as Director of HR Clinical Resources.

27.     Defendant, the University of Toledo, is a federal government contract holder who has a duty to comply with Executive Order 11246, As Amended, 41 CFR (§§ 60-30.1 - 60-30.37)[3].

28.     Plaintiff was hired in 2015 in the University's Human Resources ("HR") department.

---

[3] Executive Order 11246, as Amended, is attached as Exhibit 5 for the Court's convenance.

5

29. In her most recent role as Director- Human Resources Clinical Operations, Ms. Chapman provided guidance and oversight of HR team members, employee/labor relations and talent and performance management at the University of Toledo Medical; Center ("UTMC").

30. During her employment at the University, Ms. Chapman was never disciplined or written up for unsatisfactory work.

31. Ms. Chapman's performance reviews were continuously above average.

32. Ms. Chapman received a ninety-day (90) Notice of Termination of Employment on October 14, 2020, the last day of work to be January 15, 2021.

33. Prior to her termination, Ms. Chapman was subjected to different terms and conditions of employment than similarly situated Caucasian employees, which disparate treatment included, but was not limited to:

    i. Being discharged without being put on a performance improvement plan ("PIP").

    ii. being discharged without being offered any opportunity to transfer to a different position within the University.

34. Prior to her termination by the University, the University hired two (2) Caucasian employees who replaced Ms. Chapman's former supervisor, Wendy Davis, being John Elliott, a Caucasian male hired September 4, 2021, and Melissa Hurst, a Caucasian female hired September 8, 2021, Mr. Elliot & Ms. Hurst were paid a combined salary of approximately $400,000.00, plus benefits and additional spending allowances, being over $80,000.00 more in cost to the University per year.

35.    Both Mr. Elliott and Ms. Hurst were hired without their "new" job positions having job descriptions approved in accord with Ohio State law and regulations[4].

36.    Both Mr. Elliott and Ms. Hurst were hired without their "new" job positions having been posted in accord with University Policy.

37.    On information and belief, both Mr. Elliott and Ms. Hurst were friends of University President Postel, a Caucasian male, who had previously worked with each of them.

38.    Per the Notice of Termination, the only reason asserted for Ms. Chapman's termination was that she was an "at will" employee, that the University "appreciates the work you have done for The University and regret[s] that this action is necessary."

39.    As a result of the disparate, discriminatory treatment to which she was subjected, Plaintiff filed a complaint with the OCRC and the EEOC, which resulted in an OCRC finding that it was probable that the University had engaged in discriminating against Ms. Chapman in violation of ORC § 4112.

40.    As a direct and proximate result of Defendant's wrongful and discriminatory actions as aforesaid, Plaintiff has suffered emotional distress, mental anguish, embarrassment, humiliation, and damage to reputation.

41.    As a direct and proximate result of Defendant's discriminatory actions against Plaintiff as aforesaid, Plaintiff has suffered a loss of employment, loss of income, loss of benefits, loss of employment opportunities, and incurred significant and ongoing attorney fees.

---

[4] Specifically, but not limited to, the job posting mandates to assure fairness and non-discrimination as well as affirmative action in job hiring practices required of a Government Contract holder (i.e., the University of Toledo) pursuant to Executive Order 11246, as amended, and Title VII of the 1964 Civil Rights Act, as amended.

42. Plaintiff has timely exhausted all administrative remedies available to her to redress the wrongs perpetrated upon her by Defendant as aforesaid.

43. As detailed above, Defendant targeted Plaintiff with racial bias.

44. As detailed herein above, Defendant's acts of discrimination against Plaintiff were purposeful and undertaken with the discriminatory intent to deprive Plaintiff of her rights under federal law.

45. As a direct and proximate result of the Defendant's wrongful and discriminatory actions as aforesaid, Plaintiff has been denied due process of law in violation of the United States laws and the laws of the State of Ohio.

46. As a direct and proximate result of the Defendant's wrongful and discriminatory actions as aforesaid, Plaintiff has suffered a loss of her property interests in violation of the United States laws.

47. 42 U.S.C. §1988(b) allows for the award of attorney fees in an action to enforce Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d *et seq*.).

48. 42 U.S.C. §1988(c) allows for the award of expert fees as part of an attorney's fee award in an action to enforce Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d *et seq*.).

## COUNT ONE
### (DISCRIMINATION BASED ON RACE)
### TITLE VII OF THE 1964 CIVIL RIGHTS ACT, 42 U.S.C. §2000E-2 (TITLE VII), ORC 4112

49. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 48 hereinabove as if fully rewritten herein.

50. The University of Toledo is an employer in the State of Ohio.

51.     Plaintiff, Ms. Chapman, is a member of a protected class under Federal Law based upon her race, African American.

52.     Ms. Chapman was qualified for her position of employment with the University.

53.     As a direct and proximate result of the University's discriminatory practices towards her as aforesaid, Ms. Chapman was subjected to multiple adverse employment actions which culminated in her wrongful termination.

54.     The reasons stated by Defendant for terminating Ms. Chapman are false/pretextual.

55.     Defendant knowingly discriminated against Ms. Chapman in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e-2 (Title VII) and Ohio Revised Code 4112. Et seq.

56.     As a direct and proximate result of Defendant's actions against Ms. Chapman as aforesaid, Ms. Chapman has suffered actual and consequential damages, including but not limited to, loss of income, loss of employment benefits, humiliation, pain and suffering and emotional distress, loss of enjoyment, all of which are reasonably anticipated to continue indefinitely into the future.

57.     The aforesaid conduct of Defendant was undertaken with malicious purpose, in bad faith, and/or in a reckless/wanton manner, which it knew, or reasonably should have known, would cause Ms. Chapman harm.

58.     Defendant's actions against Ms. Chapman as aforesaid were undertaken with such knowledge, malice, intent to injure and/or with such reckless or wanton disregard for Ms. Chapman's rights as entitle her, in addition to an award of actual and consequential damages, to an award of punitive damages, and/or attorney fees.

**WHEREFORE**, Plaintiff, Ms. Carolyn Chapman, respectfully prays for judgment against Defendant as follows:

(A) That per Count One (Discrimination) she be awarded judgment against Defendant for actual and compensatory damages, including, but not limited to, the amount of all salary and the value of all benefits lost due to the Defendant's discrimination for actual and compensatory damages in an amount in excess of $25,000, the full extent of which shall be proven at trial, and that she have an award of punitive damages against Defendant in an amount determined by the jury, but not less than three (3) times the amount of the actual, and compensatory damages awarded to her; and further that she be awarded reasonable attorney fees and costs;

(B) That she be awarded such other and further judgment against the Defendant as the Court deems just or equitable.


Dated: _____                      Respectfully Submitted.

                                            **THE LAW OFFICE OF NORMAN A. ABOOD**
                                            /s/ Norman A. Abood
                                            Norman A. Abood (OH. Sup. Ct. #0029004)
                                            101 Broadcast Building
                                            136 N. Huron Street
                                            Toledo, OH 43604
                                            Phone:       419-724-3700
                                            Fax:         419-724-3701
                                            E-Mail:      Norman@nabood.com
                                            - *Attorney for Plaintiff*


## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable herein.

                                            /s/Norman A. Abood
                                            Norman A. Abood



October 15, 2020

Carolyn Chapman

c/o HAND-DELIVERED

Dear Carolyn,

I regret to inform you that your employment with The University of Toledo in your capacity as Director, HR Clinical Operations, Human Resources, will end at the close of business on January 15, 2021. This letter serves as your 90-day notice as provided for by university policy. In accordance with your appointment within the unclassified civil service in the State of Ohio, you serve in an "at-will" capacity and your employment status can be modified at any time.

During the 90-day notice period, your services will not be needed by The University of Toledo or University of Toledo Medical Center, and you will be relieved of all duty. However, you will be paid your full salary through the date above as well as be covered by any health care benefits for which you currently may have coverage through January 2021. After that time, information will be sent to your home regarding eligibility for continued COBRA benefits.

Should you find other employment during this 90-day period, you must immediately notify your supervisor and the Human Resources Department, and the effective date of separation shall be changed accordingly. You will be paid your salary through January 15, 2021 and medical benefits shall terminate at the end of the month of your last day worked or January 31, 2021.

Human Resources representatives are available to answer questions regarding your benefits, as well as provide you with information regarding resources available to assist you in this transition.

We appreciate the work that you have done for The University of Toledo and regret that this action is necessary. We are confident that you will work closely with us in this difficult transition time.

Sincerely,

John Elliott
Senior Associate Vice President and Chief Human Resources Officer

cc:     Benefits
        Personnel File



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine

Commissioners: Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

**November 17, 2022**

Carolyn Chapman
9813 Oak Bend Avenue
Holland, OH 43528
carolyn.chapman.phr@outlook.com

**Date Mailed: November 18, 2022**

Bethany Ziviski, Interim Sr. AVP/CHRO
The University of Toledo
2801 W. Bancroft Street,
Human Resources, MS 205
Toledo, OH 43606
Bethany.Ziviski@utoledo.edu

## LETTER OF DETERMINATION
Carolyn Chapman v. The University of Toledo
TOL72(41356)03012022/22A-2022-01451C

**FINDINGS OF FACT:**

Charging Party filed a charge of discrimination with the Ohio Civil Rights Commission alleging Respondent engaged in an unlawful discriminatory practice. All jurisdictional requirements for filing a charge have been met.

After receiving the charge, the Commission conducted an investigation into Charging Party's allegation(s) against Respondent. During the investigation, the Commission considered relevant documents and testimony. The information gathered does support a recommendation that Respondent unlawfully discriminated against Charging Party.

There is no information to support Charging Party was denied promotional opportunities and subsequently terminated based on Charging Party's participation in a statutorily protected activity. Therefore, it is a No Probable Cause on these issues.

Respondent is a student-centered, public metropolitan research university with 20,500 students located in Toledo, Ohio. Respondent denies Charging Party's allegations of discrimination.

Charging Party alleges she was denied promotional opportunities and subsequently terminated due to her race and participation in a statutorily protected activity.

Respondent states Charging Party was not a legitimate candidate to hold one of the two highest positions in Respondent's Human Resources Department when she could not adequately perform a lower-level role. Respondent states Charging party had never held an upper-level human resources position in her entire career.



Carolyn Chapman v. The University of Toledo
TOL72(41356)03012022/22A-2022-01451C
Page 2

Respondent denies Charging Party's allegations. Respondent states Charging Party was issued a 90-day notice due to not having any human resource strategy, no planning, and no workforce planning. Respondent further alleges executive recruiting efforts were poor, which resulted in staffing issues at Respondent's medical center. Respondent states Charging Party's subordinates did not feel supported and were afraid of her. Respondent states a request had been made to terminate Charging Party for her alleged performance issues. Charging Party had been employed by Respondent since April 30, 2007, most recently as Director, HR Clinical Operations. Charging Party's job duties included, providing guidance and oversight of the assigned Human Resources team members within the clinical enterprise, being ultimately responsible for enhancing the trusted partnership with the leaders of the assigned business units in the areas of employee/labor relations, compensation, employment, talent and performance management, and other related human resources matters.

Information shows the position of Senior Associate Vice President/Chief Human Resources Officer was filled by John Elliott, Caucasian, and the Executive Director of Talent Strategy and Development position filled by Melissa Hurst, Caucasian, were not posted.

According to Respondent's Policy Number: 3364-25-113 - Recruitment of Personnel and Hiring Procedures, "All full time classified and unclassified position openings at the University are posted on the University's Employment Opportunity site located at http://jobs.utoledo.edu."

Information shows on October 1, 2020, Melissa Hurst assumed the position of Executive Director of Talent Strategy and Development. Information reveals Ms. Hurst had minimal experience/education in Human Resources and held no Human Resource certifications. Ms. Hurst's educational background consists of an undergraduate degree in Journalism and Mass Communications, a graduate degree in Higher Education, and a doctorate degree in Educational Psychology.

Documentation supports Charging Party possesses a graduate degree in Organizational Management, holds a Professional in Human Resources certification (PHR), and has over 25 years' experience in the field of Human Resources, with thirteen of those years being employed by Respondent. Although Respondent stated Charging Party never held an upper-level human resource position, Charging Party was in upper-level management employed by the Respondent as Director of HR/Clinical Services. Information supports Charging Party was demonstrably qualified for the position of Executive Director of Talent Strategy and Development based on her experience and credentials.

Information further shows, Mr. Elliott served Charging Party with a 90-day notice on October 14, 2020, nine days after assuming his role as Senior Associate Vice President/Chief Human Resources Officer and only after meeting with Charging Party once during those nine days. Mr. Elliott states the decision to terminate Charging Party was based on feedback he received from Chief Executive Officer, Richard Swaine, Caucasian, and Chief Operating Officer, Christine Stesney-Ridenhour, Caucasian, of The University of Toledo Medical Center, as well as Respondent's newly appointed Executive Director of Talent Strategy and Development, Melissa Hurst, Caucasian. Charging Party's last day of work subsequent to the 90-day notice was January 15, 2021.

Carolyn Chapman v. The University of Toledo
TOL72(41356)03012022/22A-2022-01451C
Page 3

Mr. Elliott states the feedback provided from these individuals stated Charging Party lacked any leadership planning, metrics, data, workforce strategy, and Charging Party's subordinates had reported they were afraid of her. However, witness information indicates Charging Party expected salaried employees under her supervision to strictly adhere to policy.

The investigation does not support employees were afraid of Charging Party. Further, there is no documented discipline in Charging Party's employee file. Information shows Charging Party's annual performance evaluations were consistently above average.

According to Respondent, Executive Vice President of Finance & Administration/Chief Financial Officer, Matthew Schroeder, Caucasian requested Charging Party be removed from her position despite not being Charging Party's direct supervisor. Schroeder stated he received one email complaint from Swaine. However, Respondent did not produce the complaint to staff nor could he recall what the complaint was about.

Documentation shows Charging Party had no documented discipline prior to her termination. Similarly situated Caucasian employee, Theresa Kovacs, Director of Human Resources Academic and Talent Development, was demoted for performance issues with no change in pay. In a similar circumstance, Executive Director of Internal Audit and Chief Compliance Officer, David Cutri, who had documented performance issues, was placed on a Performance Improvement Plan. Both employees were provided with the opportunity to improve unlike Charging Party. However, as stated there is no information to support Charging Party had performance issues.

Witness information supports there were issues regarding recruiting, time lapses, and delays on Respondent's Health Science Campus prior to Charging Party assuming the role of Director of HR/Clinical Services.

Information shows Charging Party and other African American employees who held key leadership positions within Respondent's Human Resources Department were terminated using a 90-day notification. Respondent alleges the African American employees were terminated for performance issues. All African American employees were either replaced by newly hired Caucasian employees or their former Caucasian subordinates.

Charging Party was replaced by her former subordinate, Jennifer Cherry, Caucasian, who at the time of Charging Party's discharge held no certifications in Human Resources and was paid at a significantly higher pay rate than Charging Party.

Since 2019, in terms of employees in upper management and leadership positions, Respondent's EEO data shows that the number of African American employees in upper management positions has decreased from 2019 to 2021. Information supports Respondent terminated African American employees and replaced them with Caucasian employees.

Information shows, the Commission has found probable cause in at least six cases involving Respondent concerning promotions and terminations within the past two years.

Carolyn Chapman v. The University of Toledo
TOL72(41356)03012022/22A-2022-01451C
Page 4

Information supports, Respondent's personnel decisions negatively impact African American employees and students.

**DECISION: (On the issues of denial of promotion and discharge/on the basis of race)**
The Ohio Civil Rights Commission determines it is **PROBABLE** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be scheduled for **CONCILIATION**.

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the Commission invites you to participate in conciliation by informal methods of conference, conciliation, and persuasion. Enclosed is a draft of the proposed Conciliation Agreement and Consent Order for your consideration. Brad Adams has been assigned as Conciliator and can be reached by telephone at 419-245-2911 or by email at Brad.adams@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process**. If the Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case will be scheduled for a public hearing.

**DECISION: (On the issues of denial of promotion and discharge/on the basis of retaliation)**
The Ohio Civil Rights Commission determines it is **NOT PROBABLE** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be **DISMISSED**.

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:** (On All Decisions)
Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of the Commission's determination. The application must be in writing and state specifically the grounds upon which it is based. You must submit the request for reconsideration, along with all additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this notice. This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad Street, 5th Floor, Columbus, Ohio 43215. Any application for reconsideration received after the ten-day period has expired will be deemed untimely. The Commission's Rules do not permit any employee of the Commission to grant any extension to this ten-day filing period. If you wish to appear before the Commissioners to present oral arguments in support or your request for reconsideration, you must specifically make a request to appear in writing.

On No Probable Cause Decisions Only:
Pursuant to Ohio Revised Code 4112.051, if you timely request and are granted reconsideration, the enclosed NOTICE OF RIGHT TO SUE will be voided. A new NOTICE OF RIGHT TO SUE will be issued once the charge is no longer pending before the Commission if a No Probable Cause finding is reached during reconsideration.

**FOR DUAL FILED CHARGES ONLY: (On No Probable Cause Decision Only)**
If your charge was filed with both the Commission and the U. S. Equal Employment Opportunity Commission (EEOC), you have the right to request that the EEOC conduct a review of the Commission finding. The request for such a review must be sent directly to the EEOC State and Local Coordinator at 101 W. Ohio St., Suite 1900, Indianapolis, IN 46204.

Carolyn Chapman v. The University of Toledo
TOL72(41356)03012022/22A-2022-01451C
Page 5

To secure such a review, you must request it in writing within **FIFTEEN (15) days** of Commission's finding, unless you request a reconsideration by Commission. In that event, our final finding, and the time for you to request review by EEOC, will be determined by Commission's action on your reconsideration request.

**NOTICE OF RIGHT TO PETITION FOR JUDICIAL REVIEW: (On No Probable Cause Decision Only)**
A determination of the Commission that constitutes a Final Order is subject to judicial review, wherein the court reviews the contents of this letter and determines if there are sufficient factual findings supporting why the Commission did not issue a complaint. A petition for judicial review must be filed in the proper common pleas court within **THIRTY (30) days** of the date the Commission mailed this Final Order. The right to obtain judicial review and the mode and procedure thereof is set forth in Ohio Revised Code § 4112.06.

The judicial review process is not a means to reexamine the investigation or further pursue your allegations through the Commission. You may consult with an attorney for information on available options.

A Probable Cause finding is not a Final Order and is not subject to judicial review by a court. All other determinations of the Commission constitute a Final Order and are subject to judicial review by a court.

**NOTICE OF RIGHT TO WITHDRAW ON A PROBABLE CAUSE DECISION:**
Pursuant to Ohio Revised Code 4112.051, you are hereby notified you have a right to withdraw the charge and file a civil action in any State of Ohio court that has jurisdiction over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the OCRC investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed.

Please refer to the enclosed **NOTICE OF RIGHT TO SUE** for additional information on Charging Party's suit rights.

FOR THE COMMISSION,

*Inder F. LeVesque*

Inder F. LeVesque
Toledo Regional Director
IFL/adf

cc:  **Representative for Charging Party**:      **Representative for Respondent**:
     None of Record                              Drew C. Piersall, Esq.
                                                  Zashin & Rich Co., L.P.A.
                                                  17 South High Street, Suite 900
                                                  Columbus, OH  43215
                                                  dcp@zrlaw.com

# OHIO CIVIL RIGHTS COMMISSION

**Board of Commissioners:**
Lori Barreras – Chair
William W. Patmon, III
Madhu Singh
Charlie Winburn
J. Rita McNeil Danish



Angela Phelps-White,
Executive Director

| | |
|---|---|
| **Charging A. Party,** | ) |
| | ) |
| **Carolyn Chapman** | ) |
| | ) |
| **v.** | ) **Charge No. TOL72(41356)03012022** |
| | ) **22A-2022-01451C** |
| **Respondent,** | ) |
| | ) |
| **The University of Toledo** | ) |
| | ) |

## NOTICE OF RIGHT TO SUE

Pursuant to Ohio Revised Code 4112.051, you may file a civil action against the Respondent(s) alleging a violation of Ohio Revised Code 4112. The lawsuit may be filed in any State of Ohio court that has jurisdictions over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the Commission investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed. NOTE: If you request reconsideration of the Commission's determination**,** this NOTICE OF RIGHT TO SUE will be vacated. FOR FEDERAL COURT FILINGS: Notices of Right to Sue under federal law will be issued by the EEOC.

**FOR THE COMMISSION**

*Inder F. LeVesque*

Inder F. LeVesque
Toledo Regional Director
640 Jackson St., Suite 936
Toledo, OH 43604
419-245-2900

Date mailed: December 15, 2022

3

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Carolyn Chapman**<br>**9813 Oak Bend Ave**<br>**Holland, OH 43528** | From: **Indianapolis District Office**<br>**101 West Ohio St., Suite 1900**<br>**Indianapolis, IN 46204** |

| EEOC Charge No.<br>**22A-2022-01451** | EEOC Representative<br>**Jeremy Sells,**<br>**State, Local & Tribal Coordinator** | Telephone No.<br>**(463) 999-1161** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Michelle Eisele 02/24/2023

Enclosures(s)

**Michelle Eisele**
**District Director**

cc:

**Drew C Piersall**
**Zashin & Rich**
**17 S. High St., Ste. 900**
**Columbus, OH 43215**

ALL-STATE LEGAL®

4

Office of Federal Contract Compliance Programs

# Executive Order 11246, As Amended

## Executive Order 11246 — Equal Employment Opportunity

SOURCE: The provisions of Executive Order 11246 of Sept. 24, 1965, appear at 30 FR 12319, 12935, 3 CFR, 1964–1965 Comp., p.339, unless otherwise noted.

Under and by virtue of the authority vested in me as President of the United States by the Constitution and statutes of the United States, it is ordered as follows:

## Part I — Nondiscrimination in Government Employment

[Part I superseded by EO 11478 of Aug. 8, 1969, 34 FR 12985, 3 CFR, 1966–1970 Comp., p. 803]

## Part II - Nondiscrimination in Employment by Government Contractors and Subcontractors

### Subpart A – Duties of the Secretary of Labor

#### SEC. 201

The Secretary of Labor shall be responsible for the administration and enforcement of Parts II and III of this Order. The Secretary shall adopt such rules and regulations and issue such orders as are deemed necessary and appropriate to achieve the purposes of Parts II and III of this Order.

[Sec. 201 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, l978 Comp., p. 230]

### Subpart B – Contractors' Agreements

#### SEC. 202

Except in contracts exempted in accordance with Section 204 of this Order, all Government contracting agencies shall include in every Government contract hereafter entered into the following provisions:

During the performance of this contract, the contractor agrees as follows:

1. The contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, gender identity, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, sexual orientation, gender identity, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

2. The contractor will, in all solicitations or advancements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, or national origin.

3. The contractor will not discharge or in any other manner discriminate against any employee or applicant for employment because such employee or applicant has inquired about, discussed, or disclosed the compensation of the employee or applicant or another employee or applicant. This provision shall not apply to instances in which an employee who has access to the compensation information of other employees or applicants as a part of such employee's essential job fu[...] discloses the compensation of such other employees or applicants to individuals who do not otherwise have ac[...] information, unless such disclosure is in response to a formal complaint or charge, in furtherance of an investiga[...]

proceeding, hearing, or action, including an investigation conducted by the employer, or is consistent with the contractor's legal duty to furnish information.

4. The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the labor union or workers' representative of the contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

5. The contractor will comply with all provisions of Executive Order No. 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

6. The contractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

7. In the event of the contractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated, or suspended in whole or in part and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

8. The contractor will include the provisions of paragraphs (1) through (8) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction, the contractor may request the United States to enter into such litigation to protect the interests of the United States. [Sec. 202 amended by EO 11375 of Oct. 13, 1967, 32 FR 14303, 3 CFR, 1966–1970 Comp., p. 684, EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230, EO 13665 of April 8, 2014, 79 FR 20749, EO 13672 of July 21, 2014, 79 FR 42971]

## SEC. 203

a. Each contractor having a contract containing the provisions prescribed in Section 202 shall file, and shall cause each of his subcontractors to file, Compliance Reports with the contracting agency or the Secretary of Labor as may be directed. Compliance Reports shall be filed within such times and shall contain such information as to the practices, policies, programs, and employment policies, programs, and employment statistics of the contractor and each subcontractor, and shall be in such form, as the Secretary of Labor may prescribe.

b. Bidders or prospective contractors or subcontractors may be required to state whether they have participated in any previous contract subject to the provisions of this Order, or any preceding similar Executive order, and in that event to submit, on behalf of themselves and their proposed subcontractors, Compliance Reports prior to or as an initial part of their bid or negotiation of a contract.

c. Whenever the contractor or subcontractor has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, the Compliance Report shall include such information as to such labor union's or agency's practices and policies affecting compliance as the Secretary of Labor may prescribe: Provided, that to the extent such information is within the exclusive possession of a labor union or an agency referring workers or providing or supervising apprenticeship or training and such labor union or agency shall refuse to furnish such information to the contractor, the contractor shall so certify to the Secretary of Labor as part of its Compliance Report and shall set forth what efforts he has made to obtain such information.

d. The Secretary of Labor may direct that any bidder or prospective contractor or subcontractor shall submit, as part of his Compliance Report, a statement in writing, signed by an authorized officer or agent on behalf of any labor union or any agency referring workers or providing or supervising apprenticeship or other training, with which the bidder or prospective contractor deals, with supporting information, to the effect that the signer's practices and policies do not discriminate on the grounds of race, color, religion, sex, sexual orientation, gender identity, or national origin, and that the signer either will affirmatively cooperate in the implementation of the policy and provisions of this Order or that it consents and agrees that recruitment, employment, and the terms and conditions of employment under the proposed contract shall be in accordance with the purposes and provisions of the order. In the event that the union, or the agency shall refuse to execute such a statement, the Compliance Report shall so certify and set forth what efforts have been made to secure such a statement and such additional factual material as the Secretary of Labor may require.

[Sec. 203 amended by EO 11375 of Oct. 13, 1967, 32 FR 14303, 3 CFR, 1966–1970 Comp., p. 684; EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230, EO 13672 of July 21, 2104, 79 FR 42971]

## SEC. 204

a. The Secretary of Labor may, when the Secretary deems that special circumstances in the national interest so require, exempt a contracting agency from the requirement of including any or all of the provisions of Section 202 of this **Order** in any specific contract, subcontract, or purchase **order**.

b. The Secretary of Labor may, by rule or regulation, exempt certain classes of contracts, subcontracts, or purchase orders (1) whenever work is to be or has been performed outside the United States and no recruitment of workers within the limits of the United States is involved; (2) for standard commercial supplies or raw materials; (3) involving less than specified amounts of money or specified numbers of workers; or (4) to the extent that they involve subcontracts below a specified tier.

c. Section 202 of this **Order** shall not apply to a Government contractor or subcontractor that is a religious corporation, association, educational institution, or society, with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities. Such contractors and subcontractors are not exempted or excused from complying with the other requirements contained in this **Order**.

d. The Secretary of Labor may also provide, by rule, regulation, or order, for the exemption of facilities of a contractor that are in all respects separate and distinct from activities of the contractor related to the performance of the contract: provided, that such an exemption will not interfere with or impede the effectuation of the purposes of this **Order**: and provided further, that in the absence of such an exemption all facilities shall be covered by the provisions of this **Order**.

[Sec. 204 amended by EO 13279 of Dec. 16, 2002, 67 FR 77141, 3 CFR, 2002 Comp., p. 77141 – 77144]

## Subpart C — Powers and Duties of the Secretary of Labor and the Contracting Agencies

### SEC. 205

The Secretary of Labor shall be responsible for securing compliance by all Government contractors and subcontractors with this Order and any implementing rules or regulations. All contracting agencies shall comply with the terms of this Order and any implementing rules, regulations, or orders of the Secretary of Labor. Contracting agencies shall cooperate with the Secretary of Labor and shall furnish such information and assistance as the Secretary may require.

[Sec. 205 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

### SEC. 206

a. The Secretary of Labor may investigate the employment practices of any Government contractor or subcontractor to determine whether or not the contractual provisions specified in Section 202 of this Order have been violated. Such investigation shall be conducted in accordance with the procedures established by the Secretary of Labor.

b. The Secretary of Labor may receive and investigate complaints by employees or prospective employees of a Government contractor or subcontractor which allege discrimination contrary to the contractual provisions specified in Section 202 of this Order.

[Sec. 206 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

### SEC. 207

The Secretary of Labor shall use his/her best efforts, directly and through interested Federal, State, and local agencies, contractors, and all other available instrumentalities to cause any labor union engaged in work under Government contracts or any agency referring workers or providing or supervising apprenticeship or training for or in the course of such work to cooperate in the implementation of the purposes of this Order. The Secretary of Labor shall, in appropriate cases, notify the Equal Employment Opportunity Commission, the Department of Justice, or other appropriate Federal agencies whenever it has reason to believe that the practices of any such labor organization or agency violate Title VI or Title VII of the Civil Rights Act of 1964 or other provision of Federal law.

[Sec. 207 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

### SEC. 208

a. The Secretary of Labor, or any agency, officer, or employee in the executive branch of the Government designated by rule, regulation, or order of the Secretary, may hold such hearings, public or private, as the Secretary may deem advisable for compliance, enforcement, or educational purposes.

b. The Secretary of Labor may hold, or cause to be held, hearings in accordance with Subsection of this Section prior to imposing, ordering, or recommending the imposition of penalties and sanctions under this Order. No order for debarment of any contractor from further Government contracts under Section 209(6) shall be made without affording the contractor an opportunity for a hearing.

## Subpart D – Sanctions and Penalties

### SEC. 209

In accordance with such rules, regulations, or orders as the Secretary of Labor may issue or adopt, the Secretary may:

1. Publish, or cause to be published, the names of contractors or unions which it has concluded have complied or have failed to comply with the provisions of this Order or of the rules, regulations, and orders of the Secretary of Labor.

2. Recommend to the Department of Justice that, in cases in which there is substantial or material violation or the threat of substantial or material violation of the contractual provisions set forth in Section 202 of this Order, appropriate proceedings be brought to enforce those provisions, including the enjoining, within the limitations of applicable law, of organizations, individuals, or groups who prevent directly or indirectly, or seek to prevent directly or indirectly, compliance with the provisions of this Order.

3. Recommend to the Equal Employment Opportunity Commission or the Department of Justice that appropriate proceedings be instituted under Title VII of the Civil Rights Act of 1964.

4. Recommend to the Department of Justice that criminal proceedings be brought for the furnishing of false information to any contracting agency or to the Secretary of Labor as the case may be.

5. After consulting with the contracting agency, direct the contracting agency to cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended, any contract, or any portion or portions thereof, for failure of the contractor or subcontractor to comply with equal employment opportunity provisions of the contract. Contracts may be cancelled, terminated, or suspended absolutely or continuance of contracts may be conditioned upon a program for future compliance approved by the Secretary of Labor.

6. Provide that any contracting agency shall refrain from entering into further contracts, or extensions or other modifications of existing contracts, with any noncomplying contractor, until such contractor has satisfied the Secretary of Labor that such contractor has established and will carry out personnel and employment policies in compliance with the provisions of this Order.

(b) Pursuant to rules and regulations prescribed by the Secretary of Labor, the Secretary shall make reasonable efforts, within a reasonable time limitation, to secure compliance with the contract provisions of this Order by methods of conference, conciliation, mediation, and persuasion before proceedings shall be instituted under subsection (a)(2) of this Section, or before a contract shall be cancelled or terminated in whole or in part under subsection (a)(5) of this Section.

[Sec. 209 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

### SEC. 210

Whenever the Secretary of Labor makes a determination under Section 209, the Secretary shall promptly notify the appropriate agency. The agency shall take the action directed by the Secretary and shall report the results of the action it has taken to the Secretary of Labor within such time as the Secretary shall specify. If the contracting agency fails to take the action directed within thirty days, the Secretary may take the action directly.

[Sec. 210 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p 230]

### SEC. 211

If the Secretary shall so direct, contracting agencies shall not enter into contracts with any bidder or prospective contractor unless the bidder or prospective contractor has satisfactorily complied with the provisions of this Order or submits a program for compliance acceptable to the Secretary of Labor.

[Sec. 211 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

### SEC. 212

When a contract has been cancelled or terminated under Section 209(a)(5) or a contractor has been debarred from further Government contracts under Section 209(a)(6) of this Order, because of noncompliance with the contract provisions specified in Section 202 of this Order, the Secretary of Labor shall promptly notify the Comptroller General of the United States.

[Sec. 212 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

Subpart E – Certificates of Merit

### SEC. 213

The Secretary of Labor may provide for issuance of a United States Government Certificate of Merit to employers or labor unions, or other agencies which are or may hereafter be engaged in work under Government contracts, if the Secretary is satisfied that the personnel and employment practices of the employer, or that the personnel, training, apprenticeship, membership, grievance and representation, upgrading, and other practices and policies of the labor union or other agency conform to the purposes and provisions of this Order.

### SEC. 214

Any Certificate of Merit may at any time be suspended or revoked by the Secretary of Labor if the holder thereof, in the judgment of the Secretary, has failed to comply with the provisions of this Order.

### SEC. 215

The Secretary of Labor may provide for the exemption of any employer, labor union, or other agency from any reporting requirements imposed under or pursuant to this Order if such employer, labor union, or other agency has been awarded a Certificate of Merit which has not been suspended or revoked.

# Part III – Nondiscrimination Provisions in Federally Assisted Construction Contracts

## SEC. 301

Each executive department and agency, which administers a program involving Federal financial assistance shall require as a condition for the approval of any grant, contract, loan, insurance, or guarantee thereunder, which may involve a construction contract, that the applicant for Federal assistance undertake and agree to incorporate, or cause to be incorporated, into all construction contracts paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to such grant, contract, loan, insurance, or guarantee, or undertaken pursuant to any Federal program involving such grant, contract, loan, insurance, or guarantee, the provisions prescribed for Government contracts by Section 202 of this Order or such modification thereof, preserving in substance the contractor's obligations thereunder, as may be approved by the Secretary of Labor, together with such additional provisions as the Secretary deems appropriate to establish and protect the interest of the United States in the enforcement of those obligations. Each such applicant shall also undertake and agree (1) to assist and cooperate actively with the Secretary of Labor in obtaining the compliance of contractors and subcontractors with those contract provisions and with the rules, regulations and relevant orders of the Secretary, (2) to obtain and to furnish to the Secretary of Labor such information as the Secretary may require for the supervision of such compliance, (3) to carry out sanctions and penalties for violation of such obligations imposed upon contractors and subcontractors by the Secretary of Labor pursuant to Part II, Subpart D, of this Order, and (4) to refrain from entering into any contract subject to this Order, or extension or other modification of such a contract with a contractor debarred from Government contracts under Part II, Subpart D, of this Order.

[Sec. 301 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

## SEC. 302

a. "Construction contract" as used in this Order means any contract for the construction, rehabilitation, alteration, conversion, extension, or repair of buildings, highways, or other improvements to real property.

b. The provisions of Part II of this Order shall apply to such construction contracts, and for purposes of such application the administering department or agency shall be considered the contracting agency referred to therein.

c. The term "applicant" as used in this Order means an applicant for Federal assistance or, as determined by agency regulation, other program participant, with respect to whom an application for any grant, contract, loan, insurance, or guarantee is not finally acted upon prior to the effective date of this Part, and it includes such an applicant after he/she becomes a recipient of such Federal assistance.

## SEC. 303

a. The Secretary of Labor shall be responsible for obtaining the compliance of such applicants with their undertakings under this Order. Each administering department and agency is directed to cooperate with the Secretary of Labor and to furnish the Secretary such information and assistance as the Secretary may require in the performance of the Secretary's functions under this Order.

b. In the event an applicant fails and refuses to comply with the applicant's undertakings pursuant to this Order, the Secretary of Labor may, after consulting with the administering department or agency, take any or all of the following actions: (1) direct any administering department or agency to cancel, terminate, or suspend in whole or in part the agreement, contract or other arrangement with such applicant with respect to which the failure or refusal occurred; (2) direct any administering department or agency to refrain from extending any further assistance to the applicant under the program with respect to which the failure or refusal occurred until satisfactory assurance of future compliance has been received by the Secretary of Labor from such applicant; and (3) refer the case to the Department of Justice or the Equal Employment Opportunity Commission for appropriate law enforcement or other proceedings.

c. In no case shall action be taken with respect to an applicant pursuant to clause (1) or (2) of subsection (b) without notice and opportunity for hearing.

[Sec. 303 amended by EO 12086 of Oct. 5, 1978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

# SEC. 304

Any executive department or agency which imposes by rule, regulation, or order requirements of nondiscrimination in employment, other than requirements imposed pursuant to this Order, may delegate to the Secretary of Labor by agreement such responsibilities with respect to compliance standards, reports, and procedures as would tend to bring the administration of such requirements into conformity with the administration of requirements imposed under this Order: Provided, That actions to effect compliance by recipients of Federal financial assistance with requirements imposed pursuant to Title VI of the Civil Rights Act of 1964 shall be taken in conformity with the procedures and limitations prescribed in Section 602 thereof and the regulations of the administering department or agency issued thereunder.

# Part IV — Miscellaneous

## SEC. 401

The Secretary of Labor may delegate to any officer, agency, or employee in the Executive branch of the Government, any function or duty of the Secretary under Parts II and III of this Order.

[Sec. 401 amended by EO 12086 of Oct. 5, l978, 43 FR 46501, 3 CFR, 1978 Comp., p. 230]

## SEC. 402

The Secretary of Labor shall provide administrative support for the execution of the program known as the "Plans for Progress."

## SEC. 403

a. Executive Orders Nos. 10590 (January 19, 1955), 10722 (August 5, 1957), 10925 (March 6, 1961), 11114 (June 22, 1963), and 11162 (July 28, 1964), are hereby superseded and the President's Committee on Equal Employment Opportunity established by Executive Order No. 10925 is hereby abolished. All records and property in the custody of the Committee shall be transferred to the Office of Personnel Management and the Secretary of Labor, as appropriate.

b. Nothing in this Order shall be deemed to relieve any person of any obligation assumed or imposed under or pursuant to any Executive Order superseded by this Order. All rules, regulations, orders, instructions, designations, and other directives issued by the President's Committee on Equal Employment Opportunity and those issued by the heads of various departments or agencies under or pursuant to any of the Executive orders superseded by this Order, shall, to the extent that they are not inconsistent with this Order, remain in full force and effect unless and until revoked or superseded by appropriate authority. References in such directives to provisions of the superseded orders shall be deemed to be references to the comparable provisions of this Order.

[Sec. 403 amended by EO 12107 of Dec. 28, 1978, 44 FR 1055, 3 CFR, 1978 Comp., p, 264]

## SEC. 404

The General Services Administration shall take appropriate action to revise the standard Government contract forms to accord with the provisions of this Order and of the rules and regulations of the Secretary of Labor.

# SEC. 405

This Order shall become effective thirty days after the date of this Order.

---

**Agencies**    **Forms**    **About Us**    **News**    **Contact Us**

**FEDERAL GOVERNMENT**⊞    **LABOR DEPARTMENT**⊞    **ABOUT THE SITE**⊞

White House                 About DOL                    Disclaimers

Benefits.gov                Guidance Search              Plug-Ins Used on DOL.gov

Coronavirus Resources       Español                      Accessibility Statement

Disaster Recovery Assistance  Office of Inspector General

DisasterAssistance.gov      Subscribe to the DOL Newsletter

USA.gov                     Read the DOL Newsletter

Notification of EEO Violations  Emergency Accountability Status Link

No Fear Act Data            A to Z Index

U.S. Office of Special Counsel

**Office of Federal Contract
Compliance Programs**

An agency within the U.S.
Department of Labor
200 Constitution Ave NW
Washington, DC 20210
1-866-4-USA-DOL
1-866-487-2365
www.dol.gov

Connect With DOL

  

Site Map    |    Important Website Notices    |    Privacy & Security Statement