IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Theresa A. Kovacs,  Case No. 22-cv-2151

    Plaintiff,

  v.  **ORDER**

University of Toledo,

    Defendant.

This is a retaliation case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. (Doc. 1). Defendant, the University of Toledo is a state university. Defendant employed Plaintiff until it terminated her in February 2021. Whereupon she filed this lawsuit.

Before me is Plaintiff's motion for reconsideration of my January 10, 2024 Order (the "Order") granting in part and denying in part Defendant's motion for summary judgment. (Doc. 36). Defendant filed a response brief in opposition (Doc. 37) and Plaintiff filed a reply (Doc. 38).

For the reasons that follow, I deny Plaintiff's motion. In addition, I direct Plaintiff's counsel to reimburse the Defendant for the fees and costs it and its attorneys have incurred in successfully opposing Plaintiff's unwarranted motion.[1]

### Background

Plaintiff takes issue with the portion of the Order that addressed her claim for wrongful termination. (*See, generally*, Doc. 36).

---

[1] *See* "Civil Case Preferences" under "Additional Information" tab at:
https://www.ohnd.uscourts.gov/content/judge-james-g-carr.

In the Order, I explained that it is Plaintiff's burden to set forth the *prima facie* elements of a wrongful termination retaliation claim under Title VII. (Doc. 34, PgID. 2754). Plaintiff fell short in establishing a causal connection between the protected activity and the materially adverse employment action, *i.e.*, her termination. (*Id*. at PgID. 2754–55).

In her opposition to Defendant's motion for summary judgment, Plaintiff relied only on temporal proximity between the adverse employment action and the protected activity to establish the causal connection. (*Id*. at PgID. 2761). I determined that the temporal proximity—of over three-and-a-half months—was insufficient as a matter of law to justify an inference of retaliation. (*Id*. at PgID. 2761–64).[2]

In her motion for reconsideration, Plaintiff argues that I erred in this ruling. (Doc. 36, PgID. 2771–78). She argues that, in addition to temporal proximity, I should have also considered the fact that the Ohio Civil Rights Commission ("OCRC"), when investigating Plaintiff's claim, found that "[Plaintiff] was retaliated against for engaging in protected activity as well as discriminated against based on race." (Doc. 1-6, PgID. 34).

**Legal Standard**

Although the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, the Sixth Circuit has held that I may treat such a motion as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). I may grant a motion to amend or alter judgment if there is a clear error of law or newly discovered

---

[2] Notably, my analysis of Plaintiff's demotion—which occurred on November 6, 2020, just seventeen days after her last protected activity—resulted in a different conclusion. I found that temporal proximity was enough of a causal link to satisfy this element of Plaintiff's demotion-based retaliation claim. (See, generally, Doc. 34).

2

evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

## Discussion

### a. Improper Motion for Reconsideration

Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls my attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law.

Plaintiff's motion does none of these things.

Instead, Plaintiff argues that "[n]o ruling has been entered precluding the Court from considering the OCRC probable cause finding in favor of the Plaintiff." (Doc. 36, PgID. 2772). This misses the mark.

I have adopted the practice, and shall continue to employ it, of imposing sanctions on attorneys who file untimely or meritless motions for reconsideration. *See, e.g., American Trim, L.L.C. v. Oracle Corp.*, 230 F. Supp. 2d 803, 804 (N.D. Ohio 2002) ("It is time that lawyers who file unfounded motions for reconsideration, which is all this motion really is, and renew objections to rulings that have been preceded by consideration of the arguments they simply repeat in support of motions to reconsider, come to understand that there will be a cost to their doing so. A party that prevails on rulings should not have to invest resources in having those rulings reconfirmed."); *Miller v. Norfolk Southern Rwy. Co.*, 208 F. Supp. 2d 851, 854 (N.D. Ohio 2002) ("counsel who in the future file unfounded, unmerited, and unsuccessful motions for reconsideration simply because they disagree with a ruling, decision, or order should expect to be sanctioned to the full extent permitted under Rule 11 and 28 U.S.C. § 1927.").

I therefore Order that Plaintiff be sanctioned in the amount of $2,000, or in the amount of attorney fees the opposing party incurred in responding to the motion for reconsideration, whichever is less. *Id*.

### b. No Basis on the Merits

Even if the motion were proper, it has no merit.

Plaintiff argues that the OCRC letter "provide[s] additional evidence of causal connection, i.e., a link between her protected activity and the Defendant's decision to terminate her." (Doc. 36, PgID. 2777). Plaintiff admits, however, that the OCRC letter, "on its own," does **not** "establish[] a prima facie case that she was unlawfully terminated." (*Id*.).

In other words, Plaintiff argues that, if I consider both the temporal proximity (which is inadequate on its own) along with the OCRC letter (which, Plaintiff admits, is also inadequate on its own), then those two things together add up to a causal connection that is sufficient to overcome Defendant's summary judgment motion.

I disagree.[3]

To adopt Plaintiff's premise, I must first be willing to accept that the OCRC finding is admissible for its truth. In other words, I would have to accept as a matter of law on summary judgment that the OCRC finding of probable cause is evidence that Defendant retaliated against the Plaintiff in firing her. I reject this conclusion for several reasons.

---

2 Plaintiff did not present these arguments in her response to the motion for summary judgment, and it is too late to do so now. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses."). Plaintiff noted that the OCRC issued a finding of probable cause in her favor, but did not set forth the reasons why it should be evaluated as a causation factor for her *prima facie* case. (*See* Doc. 27, PgID. 2643).

4

The Sixth Circuit has long held that EEOC investigative reports are neither *per se* admissible, nor *per se* inadmissible for their truth at trial. *See E.E.O.C. v. Ford Motor Co.*, 98 F.3d 1341 (6th Cir. 1996) (unpublished). Rather, the Sixth Circuit holds:

> district courts should be free to adopt a general rule that refuses to admit these cause determinations in any sort of trial, whether to the court or to a jury. An EEOC cause determination is an examination of the facts surrounding an adverse employment action forming the basis for at Title VII suit. Unlike many statutory administrative decision review procedures, where the courts of appeals owe deference to the factual findings of an administrative agency (and the district courts are typically never involved in judicial review), the Title VII context is not one of these processes. In Title VII cases, either a jury or a district judge is the fact-finder. The district court, and the court of appeals, owes no deference to what the EEOC thought the facts were when it brought the case before the district court.
>
> Moreover, an EEOC cause determination carries an evidentiary value of practically zero. … Generally, the only plausible value of an EEOC cause determination would be that it presents the evidence of discrimination that the EEOC considered. Presumably, much of that same evidence could be adduced at trial, and therefore, the admission of the EEOC cause determination referencing it would be redundant. As for any evidence contained in an EEOC cause determination that is properly excluded at trial, an attempt by the EEOC to admit those parts of the EEOC cause determination becomes a not-too-subtle attempt to end-run the Federal Rules of Evidence.

*Ford Motor Co.*, *supra*, 98 F.3d 1341 at * 9–10.

Later, in *Alexander v. Caresource*, 576 F.3d 551 (6th Cir. 2009), the Court reiterated its conclusion as applied to OCRC letters, such as the letter in this case.

The Court in essence held that an OCRC letter should be evaluated for admissibility on a case-by-case basis. It acknowledged that, "[c]ertainly there are reasons for excluding a probable cause determination at trial." *Id*. at 562. And on the other hand, the Court also noted, "at the summary judgment stage, the report ought to be considered for the factual material it contains to determine if a fact question is raised." *Id*.

5

Plaintiff extrapolates this last observation as a directive from the Sixth Circuit that I should have considered the OCRC letter in the summary judgment ruling. But further reading of *Alexander* clarifies that the Court made no such directive, whatsoever.

Indeed, the *Alexander* Court upheld the trial court's decision *not* to give the OCRC letter much, if any, weight in its summary judgment determination. *Id*. at 563. The Court found that some of the facts and conclusions in the OCRC letter were not trustworthy. *Id*. at 563–64.

Specifically, in *Alexander*, "the conclusions [in the OCRC letter] were not tied to specific facts, and it was unclear what evidence the investigator considered in reaching her conclusion." *Id*. at 563. Moreover, "there was no agency 'hearing,' the investigation lingered for over a year before the report was completed, and there is no information in the record as to the evidence available to the agency." [4] *Id*.

The OCRC letter here presents similar trustworthiness problems. Just as with the OCRC investigative file, which I have already ruled on, the OCRC letter is largely hearsay. (*See* Doc. 32). It contains "multiple layers of statements, […] and each statement must conform with an exception to the hearsay rule." (Doc. 32, PgID. 2723).

Significantly, in the Order, I found that the relevant "protected activity" for the purposes of this case were the five communications where Plaintiff voiced her concerns with Defendant's proposal to promote Tracy Brown. The OCRC letter does not rely on the same protected activity in its findings.

---

[4] *Alexander* explains that: "In this Circuit, '[t]o determine whether a report is trustworthy, courts consider the following four factors (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems.'" *Alexander*, *supra*, 576 F.3d at 563 (citing *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009)).

Indeed, in the portion of the OCRC letter discussing Plaintiff's termination, the OCRC emphasizes Dreyon Wynn's conversation with Defendant's Vice President of Diversity Willie McKether on January 26, 2021. (Doc. 1-6 at PgID. 33). In that discussion, Wynn voiced his concern over Defendant's disparate treatment of its Caucasian and African American employees, in that the Defendant demoted the Caucasian employee (Plaintiff) but terminated the three African American employees. (*Id*. at PgID. 33).

Defendant served Plaintiff with a 90-day termination notice on February 9, 2021— just days after Wynn's conversation with McKerther. (*Id*. at 33–34). The OCRC conclusion implies that the temporal proximity between the January 26, 2021 conversation between Wynn and McKerther and Defendant's notice of Plaintiff's termination February 9, 2021 establishes a causal connection needed to set forth a retaliation claim.

But here, unlike with the OCRC, Wynn and McKerther's discussion is not the relevant protected activity. The OCRC letter's discussion of the conversation, and the conclusions built on it, confuses the issues that are relevant to this case.

The OCRC letter is not a model of clarity in its explanation of its conclusions regarding Plaintiff's termination. The letter blends its analysis of race discrimination with its analysis of retaliation. For example, after noting the January 26 and February 9 dates, the letter states:

> Had it not been for [Plaintiff's] race it would not have been necessary for [Defendant] to remove her.
>
> […] It may be reasonably inferred [that Plaintiff] became an aggrieved person because her termination was used as a cover up for race discrimination. The investigation shows Charging Party was retaliated against for engaging in protected activity as well as discriminated against based on race.
>
> **DECISION: (on the issues of demotion, terms and conditions, (workspace being relocated) and termination on the basis of retaliation, on the issue of termination on the basis of race, (upon discovery).**

7

> The [OCRC] determines it is **PROBABLE** that [Defendant] has engaged in an unlawful discriminatory practice in violation of [O.R.C.] 4112.

(*Id*. at PgID. 33–34 (emphasis in original)).

As this portion of the OCRC letter demonstrates, the OCRC blends its analysis of race discrimination with its analysis of retaliation. Plaintiff's case before me is a retaliation case, only; not a race discrimination case. The OCRC's conflation of the two different theories is likely to be confusing and unhelpful to a factfinder.

Last, Plaintiff argues that the result of the Order decreases the potential value of her case. (Doc. 36, PgID. 2776). Essentially, she argues that her financial damages resulting from her demotion claim are not as significant as her financial damages resulting from her termination. (*Id*.).

The range of a plaintiff's potential damages under different legal theories is not something I can, or should, consider in determining a summary judgment motion. Plaintiff's argument in this regard is not persuasive.[5]

## Conclusion

It is, therefore, ORDERED THAT:

(1) Plaintiff's motion for reconsideration (Doc. 36) be, and the same hereby is, denied.

(2) Defendants shall notify Plaintiff's counsel within two weeks of today's date, whether the amount of attorney fees and costs incurred as a result of having to respond to Plaintiff's motion for reconsideration is less than $2,000, and, if so, the amount thereof; and

---

[5] As a practical matter, the jury may ultimately evaluate evidence very similar to the information that the OCRC team evaluated when arriving at its own conclusion. The difference between the jury's evidence and the OCRC's information, however, is crucial. In this case, the jury will only consider what the Federal Rules of Evidence permit. The OCRC was not bound by those rules when it came to its own conclusions.

8

(3) Upon receiving such notification, Plaintiff's counsel shall pay Defendants' counsel such lesser amount, or $2,000; and such payment must be made within two weeks of the date they receive notice from Defendants' counsel.

SO ORDERED.

>	*/s/ James G. Carr*
>	Sr. U.S. District Judge
>	DATE: 6/17/2024