### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **THERESA A. KOVACS**, | ) | CASE NO. 3:22-cv-02151-JGC |
| | ) | |
| Plaintiff, | ) | **HON. JEFFREY HELMICK** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNIVERSITY OF TOLEDO**, | ) | **PLAINTIFF'S MOTION TO** |
| | ) | **CERTIFY ORDER FOR** |
| Defendant. | ) | **INTERLOCUTORY APPEAL** |
| | ) | |
| | ) | |

Pursuant to 28 U.S.C. § 1292(b), Plaintiff Theresa A. Kovacs respectfully moves this Court to certify its January 10, 2024 Order (ECF# 34) for interlocutory appeal.  The January 10, 2024 order, granting in part and denying in part Defendant's Motion for Summary Judgment, ignored relevant evidence, the consideration of which would have changed its ruling.  Thus, resolution of this procedural question will materially advance this litigation.

The Plaintiff is seeking leave to take an immediate appeal from the Court's ruling on summary judgment, which dismissed her principal claim for termination for relief, but left in place a claim of less financial consequence relating to her demotion by Defendant University of Toledo (the "Defendant").  As matters now stand, the Plaintiff will only receive an opportunity to appeal dismissal of her principal claim after taking her demotion claim to trial.  Then, if Plaintiff's appeal of the summary judgment ruling succeeds, she will face the necessity of a second trial covering much of the same evidence in order to present her principal claim to a jury.

These claims should go to trial simultaneously. The current posture of this case will waste both the Court's and the parties' time and resources by necessitating a full trial exclusively on the Plaintiff's demotion claim as a precondition to appealing the summary judgment entered on the termination part of her case.

Interlocutory appeals under 28 U.S.C. § 1292(b) exist to remedy this very sort of circumstance, where the absence of an immediate appeal threatens to protract and expand the litigation. The Plaintiff can satisfy all of the technical requirements for relief under the statute. The Court should grant this Motion to Certify Order for Interlocutory Appeal.

    Respectfully submitted,

    COHEN ROSENTHAL & KRAMER LLP

    /s/ Ellen M. Kramer
    Ellen M. Kramer (0055552)
    emk@crklaw.com
    Jason R. Bristol (0072989)
    jbristol@crklaw.com
    3208 Clinton Avenue
    Cleveland, Ohio 44113
    216-815-9500 [Tel.]
    216-781-8061 [Fax]

    *Counsel for Plaintiff*

**MEMORANDUM IN SUPPORT**

I.   **BACKGROUND INFORMATION**

This is a retaliation case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  ECF#1, PageID# 1.

The Plaintiff was a longtime employee in the HR Department of the Defendant, working there from 2003 until the University terminated her on February 9, 2021.  *Id.* at 1,3.  The termination occurred almost exactly three months after the Defendant had already demoted Plaintiff from her position as Director of HR Academic & Talent Development to that of Senior HR Consultant.  *Id.* at 3,7.

A.   **Ohio Civil Rights Commission Proceeding**

Within weeks of her termination Plaintiff submitted charges to the Ohio Civil Rights Commission ("OCRC").  *Id.* at 8.  On November 18, 2021, following a thorough investigation, the OCRC issued a finding of probable cause that Plaintiff was demoted and terminated unlawfully in retaliation for engaging in protected activity (the "Probable Cause Finding").  *Id.* at 8, 31- 36.  Among the relevant findings from the Probable Cause Finding are:

- Plaintiff was demoted on November 6, 2020, after working for her new supervisor for only 36 days.  *Id.* at 33.
- After the demotion Plaintiff was not assigned an area and was not given many job duties.  *Id.*
- On January 26, 2021, Defendant's employee Dreyon Wynn, who is African American, contacted the Defendant's Vice President of Diversity, Dr. Willie McKether, about the Plaintiff's demotion, expressing concern to McKether that the Plaintiff was not served with a separation notice, unlike three African Americans who also held leadership positions in the University's HR Department, but were terminated between September 2020 and January 2021.  ECF#1-6, PageID#: 33.  In this conversation Wynn told McKether that Wynn would use the Plaintiff as a comparator to the three African Americans who had been terminated.  *Id.*

- The Plaintiff was terminated exactly two weeks after this conversation between Wynn and McKether. *Id.*
- When the Plaintiff was terminated, she had only been in the position to which she had been demoted for 70 days. *Id.* Moreover, the Plaintiff's new supervisor, Jason Beck, had only been supervising her for 36 days. *Id.*
- The Plaintiff was terminated despite an absence of any performance issues or any documented discipline. *Id.*
- Despite having worked for the Defendant **for 18 years**, the Plaintiff was not given an opportunity to correct any alleged performance issues before she was demoted or fired. *Id.* at 31, 33 (emphasis added).

The OCRC found that the Defendant changed the Plaintiff's recent demotion for protected activity to a termination fourteen days after an African American employee in the Plaintiff's department exposed the disparate treatment between white and black HR employees. *Id.* In other words, the Plaintiff's termination only happened because of her recent demotion and the terminations of African Americans in the HR Department at about the same time. *Id.*

Prior to issuing the Probable Cause Finding, the OCRC interviewed twelve witnesses and reviewed hundreds of documents. ECF#28, PageID# 2657-58. The Defendant was represented by counsel throughout the OCRC proceeding, and this counsel participated in numerous of the OCRC witness interviews and submitted a lengthy position statement. *Id.*

B. **Procedural posture of this case**

This lawsuit ensued after the Probable Cause Finding, and the Defendant moved for summary judgment in August of 2023. ECF#18. On January 10, 2024, the trial court ruled on the motion for summary judgment, denying it with respect to the Plaintiff's demotion claim and granting it with respect to the Plaintiff's termination claim. ECF#34,

PageID# 2767.[1]  Despite references to the OCRC Probable Cause Finding throughout the Plaintiff's opposition to the Defendant's MSJ,[2] the summary judgment ruling does not include a single reference to that Finding.  *Id.*

As the January 10 ruling is interlocutory, it is not able to be appealed until after the Plaintiff's demotion-claim trial.  After the trial on her demotion claim, Plaintiff plans to appeal the court's grant of summary judgment on the termination aspect of her claim.  If the appeals court reverses the grant of summary judgment in favor of the Defendant on the termination claim, then there will be a second jury trial **after** that appeal.  Because the Plaintiff's pay was not cut with her demotion, the first trial will be on a claim with much less financial impact than the second trial on her termination claim.

As of the day this request for an interlocutory appeal is being filed, the parties are awaiting a trial date on the Plaintiff's claim that the Defendant unlawfully retaliated against her by demoting her.[3]  As matters now stand, the Plaintiff will not be able to appeal dismissal of her termination claim until after the trial on the demotion claim.  Then, if Plaintiff's appeal of the summary judgment ruling succeeds, the parties will face the necessity of a second trial covering much of the same evidence in order to present the termination claim to a jury.

These claims should go to trial simultaneously. The current posture of this case will waste both the Court's and the parties' time and resources by necessitating a full trial

---

[1] The court permitted the Plaintiff to move for reconsideration of the January 10 ruling and the Plaintiff did so on February 14, 2024.  ECF#36.  The request for reconsideration was denied on June 20, 2024.  ECF#40.
[2] ECF#31, PageID# 2696-2702:
[3] The Defendant informed the Court in June of 2024 that it will not engage in any settlement discussions.

exclusively on the demotion claim as a precondition to appealing the summary judgment entered on the termination part of Plaintiff's case.

### C. Sixth Circuit Law on Use of Government Reports on Summary Judgment

OCRC probable cause findings are admissible in court proceedings under the hearsay exception set forth in Federal Rule of Evidence 803(8), which permits the admission of government records and reports "unless the sources of information or other circumstances indicate lack of trustworthiness." *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009).

Relying on F.R.E 803(8), the Sixth Circuit in *Alexander* held that at the summary judgment stage an OCRC probable cause finding "**ought to be considered** for the factual material it contains to determine if a fact issue is raised." *Id.* at 562 (emphasis added). The *Alexander* court stated that there are occasions when an OCRC finding can be excluded in ruling on a dispositive motion, but "**only** if the court 'finds that the sources of information or other circumstances indicate lack of trustworthiness.'" *Id.* at 563 (quoting Fed.R.Evid. 803(8); *see also* 2 McCormick On Evid. § 296 (6th ed.)) (emphasis added). *See also Rembert v. Swagelok Co.*, 604 F.Supp.3d 670, 686 (N.D. Ohio 2022) (citations omitted), *rev'd on other grounds* 2023 WL 3094546 (6th Cir. 2023).

In the Sixth Circuit, to determine whether a government report, such as an OCRC finding, is trustworthy, the following non-exclusive factors are to be considered:

1) The timeliness of the investigation upon which the report is based;
2) The special skill or experience of the investigators;
3) Whether the agency held a hearing; and
4) Possible motivational problems.

*Alexander,* 573 F.3d at 563 (quoting *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009) (additional citations omitted)). Courts may also consider any other circumstances which may affect the trustworthiness of the underlying information. *Id.* (quotation omitted).

### D. Failure to Consider OCRC Probable Cause Finding

The Plaintiff moved for reconsideration of the January 10 ruling due to the court's decision not to consider the Probable Cause Finding. ECF#36. On June 20, 2024, the trial court denied the Plaintiff's request for reconsideration, again declining to factor the OCRC Probable Cause Finding into its analysis of the request for summary judgment. ECF#40.

The trial court's reasoning was that the Probable Cause Finding is "largely hearsay"[4] and presented "similar trustworthiness" problems[5] to the OCRC letter of determination at issue in *Alexander*. *Id.* at 2804. In its determination the trial court does not mention any of the four factors used to determine trustworthiness from *Alexander* - the timeliness of the OCRC investigation, the special skill or experience of the OCRC investigators, whether the OCRC held a hearing any possible motivational problems. *Id.*

Thus, when ruling on a motion for summary judgment, a thorough investigation by a government agency on the exact issue being presented should not be ignored **without**

---

[4] This, however, demonstrates a fundamental misreading of F.R.E. 803, which specifically states that records or statements of public offices are not excluded by the rule against hearsay unless the statement is untrustworthy. Thus, excluding the Probable Cause Finding because it is "largely hearsay" overlooks F.R.E. 803.

[5] The trustworthiness problem identified by the trial court was that the OCRC blended its analysis of race discrimination with its analysis of retaliation and, due to this "conflation" of the two different theories is "likely to be confusing and unhelpful to a factfinder." *Id.* at 2806. This is an analysis that should be made in determining whether the Probable Cause Finding should be admitted at trial, and not whether it should be considered in addressing a motion for summary judgment. It also ignores the standard in F.R.C.P. 56 that in order to defeat summary judgment, there must be evidence on which a jury could reasonably find for the non-moving party. *See, e.g., Bradley v. Wal-Mart Stores East, LP*, 587 Fed.Appx. 863, 866 (6th Cir. 2014).

**employing the trustworthiness analysis required by F.R.E. 803(8)**. When a trial court accords zero significance to the results of a well-established and required governmental process,[6] a massive waste of government resources ensues.

The OCRC Probable Cause Finding includes findings which are relevant to the causal connection prong of the Plaintiff's termination claim. ECF#31, PageID# 2698-99, 2711; ECF#36, PageID# 2774-75. If the lower court had considered these findings the Defendant's Motion for Summary Judgment on the termination claim would not have been granted as the Plaintiff would have met her burden of showing of presenting evidence "from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" [7] *Blair v. Henry Filters Inc.*, 505 F.3d 517, 528 (6th Cir. 2007 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

## II. LAW AND ARGUMENT

28 U.S.C. § 1292(b) accords District Courts the authority to certify issues for appeal while a matter is pending in that court. However, relief under § 1292(b) is to be granted sparingly and only used in exceptional cases. *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (citing *Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir.

---

[6] The Ohio Civil Rights Commission was established in 1959. Ohio Revised Code Section 4112.052(B) was amended in 2021 to prohibit the filing of a case for unlawful employment discrimination without first going through the OCRC charge process.
[7] The question before a court at the summary judgment stage of a retaliation claim is whether a plaintiff has "'proffered evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *George v. Youngstown State Univ.*, 966 F.3d 446, 461 (6th Cir. 2020) (quotation omitted).

1966)). *See also Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-00758, 2015 WL 4629242, *2 (N.D. Ohio Aug. 3, 2015).

To obtain certification under § 1292(b), a movant must establish that: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *Memphis*, 293 F.3d at 350 (citation omitted).

### A. Material advancement of ultimate termination of the litigation

An interlocutory appeal "'materially advances litigation when it 'save[s] judicial resources and litigant expense.'" *Executive Ambulatory Surgical Center, LLC v. State Farm Mutual Automobile Ins. Co.*, No. 18-cv-14094, *3, 2021 WL 51395 (E.D. Mich. Jan. 6, 2021) (quotations omitted). *See also Cheryl & Co. v. Krueger*, No. 2:18-cv-01485, 2020 WL 6334466, *1 (S.D. Ohio Oct. 29, 2020); *Merritt-Ruth v. Latta*, No. 14-cv-12858, 2015 WL 4756612, *5 (E.D.Mich. Aug. 11, 2015); *U.S. ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 Fed.Supp.2d 858,871 (S.D. Ohio 2012) (quotation omitted)

Since Plaintiff cannot currently appeal the January 10 ruling as it relates to her termination claim, this case will be going to trial in the near future on Plaintiff's demotion claim. After the trial on Plaintiff's demotion claim, Plaintiff can then appeal the January 10, 2024 ruling as it relates to her termination. If an appellate court reverses the trial court's January 10 grant of summary judgment to the Defendant on Plaintiff's termination claim, that claim will be sent back to the trial court for a second trial. However, an appellate court ruling prior to trial on the demotion claim will prevent the need for these two separate trials.

This litigation is at a crossroads. One route will lead to the expenditure of substantial judicial and litigant resources conducting a trial on the Plaintiff's demotion claim, a subsequent appeal on at least her termination claim, and a possible second trial related to her termination. The other route, if this motion is granted, is that only one trial will be necessary.

An immediate appeal in this proceeding will result in the use of much fewer court resources. Accordingly, the public's interest in judicial economy[8] will be much better served if the court and the parties and the judicial system do not need to expend resources on two separate jury trials.

B. **Controlling question of law**

For purposes of 28 U.S.C. ¶ 1292(b), a legal issue which "could materially affect the outcome of the case" is controlling. *Merritt-Ruth,* at *3; *Gaylord Entertainment Co. v. Gilmore Entertainment Group*, 187 F.Supp.2d 926, 956 (M.D. Tenn. 2002) (quoting *West. Tenn. Chapter of Assoc. Builders and Contractors, Inc. v. City of Memphis*, 138 F.Supp.2d 1015, 1018-19 (W.D. Tenn. 2000)). "An issue is considered to be controlling if its resolution on appeal could result in a reversal of a district court's final judgment. In addition, an issue may be considered controlling if its resolution has precedential value, if it is central to liability, or if it would save the Court and the litigants substantial times and resources." *Gaylord*, 187 F.Supp.2d at 956.

Requiring the trial court to consider the trustworthiness of an OCRC probable cause finding before ruling on a dispositive motion is central to liability in this proceeding. In the Sixth Circuit exclusion of an OCRC report is permitted **only** if the court first finds that

---

[8] As the Defendant is a State University, the State of Ohio will also save money if an interlocutory appeal is permitted.

Page **10** of **14**

the sources of information or other circumstances in that report indicate lack of trustworthiness. *Alexander*, 576 F.3d at 563.

### C. Substantial grounds for different opinion

Substantial grounds for a difference of opinion regarding the correctness of a decision means: "'(a) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.'" *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (quoting *City of Dearborn v. Comcast of Mich. III, Inc.*, No. 08-10156, 2008 WL 5084203, at *3 (E.D.Mich. Nov. 24, 2008)).

The Fifth, Ninth and Eleventh Circuits hold that EEOC investigate reports and determinations are per se admissible pursuant to Federal Rule of Evidence ("FRE") 803(6). *Lindsey v. Prive Corp.*, 161 F.3d 886, 895 (5th Cir. 1998); *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 399-400 (5th Cir. 1985); *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 (9th Cir. 1982); *Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir. 1972).[9]

The rationale for the per se admissibility of EEOC reports is that the probative value of these reports outweighs the negative factors set forth to F.R.E. 403. As these reports are prepared by professional investigators on behalf of an impartial agency, failing to consider them is inefficient. *See Lopez v. Kempthorne*, 684 F.Supp.2d 827, 888-89 (S.D. Tex. 2010)

---

[9] Fifth Circuit decisions issued before October 1, 1981, such as *Smith v. Universal Services, Inc.*, are binding on the Eleventh Circuit. *See, e.g., Director, Office of Worker's Compensation Programs, U.S. Dept. of Labor v. Hamilton*, 890 F.2d 1143 (11th Cir. 1989).

(citing *Plummer v. Western Intern, Hotels Co.*, 656 F.2d 502, 505 (9th 1981) (additional citations omitted).

Other courts of appeal have found that completely ignoring the resources expended in an EEOC [or OCRC] investigation is inefficient. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3rd Cir. 2002) (citing *Smith*, 454 F.2d at 157). "To ignore 'the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of discriminatory employment practices [is] wasteful and unnecessary.'" *Walia v. Potter*, No. C09-1199JLR, 2012 WL 12977878, *1 (W.D. Wash. 2012) (quoting *Bradshaw v. Zoological Soc. Of San Diego*, 569 F.2d 1066, 1069 (9th Cir. 1978)). This is because a finding by an investigator trained and experienced in the area of discriminatory practices that an unlawful practice has occurred is highly probative.[10] *Coleman*, 306 F.3d at 1344 (quotation omitted).

There are substantial differences of opinion on the question of whether a trial court may exclude an OCRC Probable Cause Finding in ruling on a motion for summary judgment without determining that the Probable Cause Finding is untrustworthy according to the standard enunciated in *Alexander*. 576 F.3d at 563. This Motion, therefore, meets the requirement that there are substantial grounds for a difference of opinion.

### III. CONCLUSION

Permitting an interlocutory appeal as to whether the District Court needs to make a finding as to the trustworthiness of an OCRC Probable Cause Finding before failing to consider it in ruling on a dispositive motion meets the standard set forth in 28 U.S.C. §

---

[10] The OCRC has experience commensurate with the EEOC. The OCRC's predecessor was established in 1959, as part of the Ohio Civil Rights Act, making Ohio the 16th state to enact legislation prohibiting employment discrimination on the basis of race, color, religion, national origin and ancestry. History | Ohio Civil Rights Commission.

1292(b). Doing so will save both judicial resources and litigant expenses; the federal courts of appeals are split on this question; and consideration of the Probable Cause Finding could result in a reversal of the January 10, 2024 ruling on Defendant's motion for summary judgment.

   For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court certify its January 10, 2024 Order granting in part and denying in part Defendant's Motion for Summary Judgment.

                Respectfully submitted,

                COHEN ROSENTHAL & KRAMER LLP

                /s/ Ellen M. Kramer
                Ellen M. Kramer (0055552)
                emk@crklaw.com
                Jason R. Bristol (0072989)
                jbristol@crklaw.com
                3208 Clinton Avenue
                Cleveland, Ohio 44113
                216-815-9500 [Tel.]
                216-781-8061 [Fax]

                *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 16, 2024, I electronically filed the foregoing PLAINTIFF'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL with the Clerk of the Court using the CM/ECF system which will also send such notification to counsel for the Defendant.

/s/ *Ellen M. Kramer*